IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHON NOLON OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:14cv620-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

## I.  Introduction

The plaintiff applied for supplemental security income benefits under Title XVI of the

Social Security Act,  42 U.S.C. § 1381 *et seq*., and disability insurance benefits pursuant to

Title II of the Social Security Act,  42 U.S.C. §§ 401 *et seq*., alleging that he was unable to

work because of a disability.  His application was denied at the initial administrative level.

The plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council

rejected a subsequent request for review.  The ALJ's decision consequently became the final

decision of the Commissioner of Social Security (Commissioner).[2]  *See Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Based on the court's review of the record in this

case and the briefs of the parties, the court concludes that the decision of the Commissioner

should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

To make this determination[3] the Commissioner employs a five step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

---

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[4]   *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th  Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Owens was 29 years old at the time of the hearing before the ALJ.

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

(R. 35).  He has completed the seventh grade in special education classes.[5]  (*Id.*).

Owens' prior work experience includes work as a "driver helper." (R. 23).  Following the administrative hearing, the ALJ concluded that Owens has a severe impairment of "mild mental retardation." (R. 15).  The ALJ concluded that Owens was able to perform his past relevant work as a driver's helper, and thus, he was not disabled.  (R. 23).  In addition,  the ALJ concluded that Owens was not disabled because he has the residual functional capacity to perform other work that is available in the national economy.  (R. 24)

**B. The Plaintiff's Claims.**  Owens presents two issues for the Court's review.

1.  The Commissioner's decision should be reversed because the ALJ failed to follow the "slight abnormality" standard by failing to find Mr. Owens' psoriasis and obesity as severe impairments, as required by SSR 96-3p.

2.  The ALJ committed reversible error in failing to find Mr. Owens' mild mental retardation meets or equals the requirements of Listing 12.05C.

(Doc. # 12, Pl's Br. at 6 & 9).

## IV.  Discussion

This court's ultimate inquiry is whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  While a claimant has the burden of proving that he is disabled, an ALJ has a basic duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003);  *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985).

---

[5]  Owens' school records also indicate that he was held back in first and fifth grades.  (R. 54, 234-236).

4

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking.  It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*.  The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

The ALJ is not free to simply ignore medical evidence, nor may she pick and choose between the records selecting those portions which support her ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence.  *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992).  When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why she accepted or

rejected one opinion or record over another.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."  *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).[6]  "Failure to do so requires the case be vacated and remanded for the proper consideration."  *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985).  As will be explained, the court concludes that the ALJ failed to fully and fairly develop the record regarding whether Owens meets or equals Listing 12.05C.[7]  Accordingly, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

### A.      Deficits in Adaptive Functioning

Listing 12.05, *Intellectual disability*, provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

> § 12.05. *Intellectual disability.*  Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a

---

[6]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[7]  Because the court concludes that this matter must be remanded for further proceedings because the ALJ erred in her determination of the Listing 12.05C issue, discussion of Owens' first issue is unnecessary.

physical or other mental impairment imposing additional and significant work-related limitation of function.

*See* 20 C.F.R. Pt. 440, Subpt. P. App. 1, Listing 12.05C.

"The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings." 20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.00 MENTAL DISORDERS.

> To meet listing 12.05 ("intellectual disability"), "claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton*, 120 F.3d at 1219. These requirements are referred to as the listing's "diagnostic criteria." *See* 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *See id*. § 12.05. Under paragraph C, the only paragraph at issue here, a claimant must show that [he] has both "[a] valid, verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*Frame v. Comm'r, Soc. Sec. Admin.*, — F. App'x. —, 2015 WL 150733, *2 (11th Cir. 2015) (No. 13-15347).

Consequently, "a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." *See Monroe v. Comm'r of Soc. Sec.*, 504 F. App'x. 808, 810 (11th Cir. 2013) *quoting Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992). *See also Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). In this Circuit,

"a claimant need not present evidence that [he] manifested deficits in adaptive deficits manifested prior to the age of twenty-two, when [he] presented evidence of low IQ test results after the age of twenty-two." *Monroe*, 504 F. App'x. at 810 *quoting Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001). *See also Burt v. Barnhart*, 151 F. App'x. 817, 819 (11th Cir. 2005).

On February 16, 2011, Owens underwent a psychological consultative examination. He was administered the Wechsler Adult Intelligence Scale for Adults - IV by Dr. Robert Kline, a licensed clinical psychologist.   (R. 334-36).   Owens obtained a verbal comprehension IQ score of 66, a perceptual reasoning scale I.Q. score of 63, a working memory scale IQ score of 60, a processing speed scale I.Q. score of 53, and a general ability scale I.Q. score of 60, and a full scale I.Q. score of 55.  Dr. Kline indicated that the test results were valid and accurate.  (R. 334).  Throughout his evaluation, Dr. Kline noted that Owens "struggled with basic concentration tasks," and he "struggled with many of the test instructions and directions." (*Id*.).  Dr. Kline opined that Owens' general cognitive abilities, reasoning abilities, and nonverbal reasoning abilities were "in the extremely low range." (R. 334-35).

> Mr. Owens's ability to sustain attention, concentrate, and exert mental control is in the extremely low range (WMI = 60).  Mr. Owens's ability in processing simple or routine visual material without making mistakes is in the extremely low range when compared to his peers (PSI = 53).

(R. 335).  Finally, Dr. Kline offered the following opinion.

> Results of the immediate administration of the intellectual assessment revealed that Mr. Owens was functioning at mild range and (sic) retardation.  This is

8

consistent with his presentation, his history of academic difficulty, and his reported problems with some forms of independent functioning. Considering what is known about mental retardation and similar forms of cognitive impairment, it is anticipated that Mr. Owens' difficulties will continue for the foreseeable future.

As Mr. Owens's disability application is also based on the presence of physical limitations and chronic pain, it is recommended that a qualified physician be consulted who can comment on the extent and severity of these reported symptoms and the impact that these may have on his ability to secure and maintain gainful employment.

. . . Mr. Owens is not capable of managing benefits.

(R. 336).

On August 6, 2012, Owens underwent another psychological evaluation at the request of the Social Security Administration.  (R. 357-363).  He was again administered the Wechsler Intelligence Scale for Adults - IV.  (R. 358).  He obtained a verbal comprehension scale I.Q. score of 68, a performance scale I.Q. score of 69, a working memory scale I.Q. score of 69, a processing speed scale I.Q. score of 74, and a full scale I.Q. score of 64. (R. 358-59).  Dr. Randall Jordan, a licensed clinical psychologist, opined that Owens' scores were "consistent with premorbid estimates and past historical abilities," and estimated his intelligence to be in the mild mental retardation range.  (R. 358-59).  Dr. Jordan noted that Owens' subscale scores were significantly lower than his peers, and that his daily living skills were "compromised by intellectual function."  (R. 359).  Finally, Dr. Jordan  offered the following diagnostic impression.

Prognosis for a favorable response in the next 6-12 months is guarded because of the chronic nature of problems and issues.  The claimant was motivated and cooperative with the examination process.  Evidence of malingering was not

present.

To address specific areas of emphasis please read below:

*       In terms of managing finances, the claimant cannot manage their
        financial affairs in a manner consistent with same age peers

*       The history of illness does suggest historic lifetime difficulties day-to-
        day function was not significantly better at one time based upon school
        work or vocation.

*       The claimant cannot function independently.

*       The claimant can hear and understand normal conversation without
        great difficulty.

*       In terms of vocation, the claimant's ability to carry out and remember
        instructions of a simple, one-step nature is not compromised.  The
        claimant cannot do multi-step tasks even with some degree of
        supervision.

*       In terms of vocation, the claimant's ability to respond well to
        coworkers, supervision, and everyday work pressure is not
        compromised due to psychiatric issues.  Physical issues do not seem to
        be the primary limiting factor.  Medical care is needed.

(R. 359).

        Because the Listing requires first "a valid verbal, performance, or full scale IQ of 60

through 70," both the 2011 and 2012 test results fall within the parameters of section 12.05C.

Thus, the plaintiff has the requisite IQ score to meet the first prong of the listing.[8]

_____

        [8]  Because Owens presented valid IQ scores between 60 and 70, he is entitled to a presumption that
the disability onset occurred before the age of 22.  *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001)
("[A]bsent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption
of a fairly constant IQ throughout [the claimant's] life.").  The Commissioner did not rebut this presumption,
and there is no evidence of that Owens' intellectual disability was caused by sudden trauma after the age of
22.  In fact, the evidence supports a conclusion that Owens has suffered from mild mental retardation long
before he reached age 22.  He repeated first and fifth grades; he attended special education classes; and he
dropped out of school in the seventh grade.  He lived with his mother until he moved in with his fiancee.  He

The ALJ, however, concluded that Owens does not meet or equal the criteria of Listing 12.05C because he has not demonstrated that he has the requisite deficits in adaptive functioning necessary to satisfy the introductory paragraph of § 12.05.  (R. 18).

> During the period at issue, the claimant lived independently, cares for his personal needs independently, cooks, shops, and goes to church (Exhibits 4E and 5E).  At the hearing, he testified that he lives with his girlfriend and her two children, which shows he is able to establish and maintain relationships which is inconsistent with the requisite deficits in adaptive functioning (Hearing Testimony).  Although the claimant testified that his girlfriend performs most of the household chores, he and his mother stated in "Function Reports" that he lived alone, cooked, shopped, and washed dished (sic) (Exhibits 4E and 5E).  Additionally, he reported at the consultative examinations that he spends the majority of his day helping at home and he assist (sic) with household chores and maintenance (Exhibits 11F and 7F).  He testified that he is able to follow some television shows and that his favorites include CSI (Hearing Testimony).  He is able to shower and bathe without assistance and is able to use the microwave.  Moreover, the claimant has had several jobs and earned sufficient quarters of coverage to have insured status under Title II, which shows he is able to complete applications and interview (Exhibits 3D and 13E).  Although he has not held most jobs for significant length of time, he worked for Chandler Furniture from 2005 to 2006 and earned about the amount of substantial gainful activity in 2006 (Exhibits 3D and 13E).  Although this was before the alleged onset of disability and the claimant stated customers complained while doing this job, the ability to hold a job at the level of substantial gainful activity for that length of time further supports a finding that the claimant does not have the required deficits in adaptive functioning (Exhibit 3D and Hearing Testimony).
>
> Additionally, at the psychological consultative examinations, the claimant was dressed and groomed appropriately (Exhibits 7F an 11F).  He maintained adequate eye contact.  He was polite and cooperative.  His speech was spontaneous, normal, well articulated, and easily understood.  His thought expression was rational and logical, but simple and concrete.  He was able to complete the interview without distraction with no significant decline in attention.  Although he was unable to spell "world," he was fully oriented.  He

---

does not have a driver's licence because he cannot pass the driving test.

denied memory problems that interfere with his daily needs. His judgment was not compromised. Although the results of the intelligence testing were within the requirements of Medical Listing 12.05 B, C, and D, findings from the mental status examinations indicate higher functioning that (sic) suggested by the test results.

(R. 18).

In an effort to clarify the Listing, the Introduction to Listing 12.00 MENTAL DISORDERS, 20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.00, explains that the Commissioner "will find that you have a listed impairment if the diagnostic description in the introductory paragraph *and* the criteria . . . of the listed impairment are satisfied." *Id*. (emphasis added). Unfortunately, the Administration did not define either the diagnostic elements to be satisfied within the introductory paragraph or the standard by which to measure those elements. However, the Listing's plain language compels a conclusion that to meet or equal Listing § 12.05, a claimant is required to demonstrate some measure of deficits in adaptive functioning.

In a recent unpublished opinion, the Eleventh Circuit refers to the Social Security Administration's own manual in an effort to more specifically determine "adaptive functioning."

The Social Security Administration's Program Operations Manual System (POMS) states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared to other unimpaired individuals of his/her same age." POMS DI 24515.056(D)(2). Similarly, the American Psychiatric Association states that the phrase refers to how effectively an individual copes with the common demands of life and how well the individual meets the standards for personal independence expected of someone in [his] particular age group, sociocultural background, and community setting. *Diagnostic and Statistical Manual of*

12

> *Mental Disorders IV-TR*, at 42 (4th ed. 2000); *see also Talavera v. Astrue*, 697
> F.3d 145, 153 (2d Cir. 2012) (explaining that the phrase "adaptive
> functioning" in Listing 12.05 refers to an individual's ability to cope with the
> challenges of ordinary life.

*Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x. 980, 983 fn.4 (11th Cir. 2013) (No. 13-11172).

In determining that Owens does not the requisite deficits in adaptive functioning, the ALJ culled the record for selective references, ignoring comments that did not support her conclusions. For example, the ALJ found that Owens "lived independently, cares for his personal needs independently, cooks, shops and goes to church." (R. 18). She ignores, however, his testimony that he does not drive, he has never taken public transportation, and he allows the cashier at the grocery store to make change for him. (R. 37-38). Owens further testified that he could make macaroni and cheese in the microwave, but he cannot cook on the stove because he "tend[s] to leave everything on high, and then [he] burn[s] the stuff up." (R. 39). Owens has never operated a washer or a dryer. (*Id*.) Owens has lived with his mother or his fiancee; he has never lived independently. The ALJ is not free to simply ignore medical evidence, nor may she pick and choose between the records selecting those portions which support her ultimate conclusion. *Marbury*, 957 F.2d at 840-84.

More importantly, the ALJ ignores the opinions of Drs. Kline and Jordan that Owens' intellectual abilities are in the extremely low range and he is significantly lower than his same age peers. (R. 332-36, 357-60). Both psychologists opined that Owens could not manage benefits, and Dr. Jordan opined that Owens could not live independently. (R. 336, 359).

The ALJ also relied on Owens' prior work as a delivery helper to conclude that he did

not have deficits in adaptive functioning.  The mere fact that Owens held a job is, as a matter of law, insufficient to support a finding that he did not have deficits in adaptive functioning. In *Ambers v. Heckler*, the court held that since Ambers met the Listing for mental retardation, "she is entitled to benefits regardless of the fact that she may be able to hold gainful employment as she did in the past."  736 F.2d 1467, 1468 (11th Cir. 1984).  *See also Powell v. Heckler*, 773 F.2d 1572, (11th Cir. 1985) (fact that claimant had worked intermittently during the period at issue is not sufficient justification to deny benefits.).  Owens' prior work experience is decidedly limited.  The ALJ ignored Owens' testimony that he got the job as a delivery helper, and kept it as long as he did, because the owner of the company was a friend.  As soon as a new owner bought the business, Owens was fired.  In concluding that Owens' previous work  history demonstrates that he does not have any deficits in adaptive functioning, the ALJ does not explain how, if at all, Owens' prior work experience as a delivery helper is inconsistent with mild mental retardation.  *See generally Black v. Astrue*, 678  F.Supp.2d 1250 (N.D. Fla. 2010) (valid I.Q. scores between 60 and 70, special education classes, prior employment as a mushroom picker and reliance on family for help with complicated activities sufficient to demonstrate deficits in adaptive functioning manifested before age 22).  Taking the ALJ's reasoning to its logical conclusion, no mentally retarded person is able to do even the most basic, unskilled work including manual labor. If that reasoning is correct, then any claimant who has ever been employed would be unable to demonstrate that he or she met the Listing for mental retardation.  This is simply incorrect as a matter of law.  *See Ambers*, *supra*.

14

The ALJ then compounded her error when she found that Owens had "higher functioning" than suggested by the test results.  (R. 18).  That finding was erroneous as a matter of law.  Both psychologists who examined Owens and administrated the IQ tests opined that Owens' IQ scores accurately reflected his level of functioning.  Thus, the ALJ substituted her judgment for the judgment of the psychologists which she may not do.  *See Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989).   Consequently, the court concludes that the ALJ did not properly consider whether Owens had the requisite deficits in adaptive functioning sufficient to meet the diagnostic criteria of the introductory paragraph.

**B.  Severe impairments of sleep apnea and restless leg syndrome**.

The ALJ also committed reversible error at step 2 of the sequential analysis because the ALJ did not have sufficient evidence before her to determine whether Owens' sleep apnea or restless leg syndrome constituted severe impairments.  The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected."  *McDaniel*, 800 F.2d at 1031.  A physical impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(c).  A severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  *Bowen v. Yuckert*, 482 U.S. 137, 154 fn. 12 (1987) citing with approval Social Security Ruling 85-28 at 37a.  The plaintiff has the "burden of showing

her impairment is "severe" within the meaning of the Act." *McDaniel*, 800 F.2d at 1030.

In finding that the plaintiff's sleep apnea and restless leg syndrome were not severe impairments, the ALJ made the following findings.

> The claimant has not been diagnosed with a medically determinable impairment that would result in joint pain. Additionally, the claimant complains of restless leg syndrome and sleep apnea. The regulations provide that an "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques (20 CFR 404.1508 and 416.908). Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings (SSR 96-4p). Prior to the alleged onset of disability, the claimant complained of musculoskeletal pain resulting from acute injuries, but findings from objective testing were normal (Exhibit 1F). He has not sought treatment for chronic joint pain since the alleged onset date despite receiving treatment from his primary care provider and the availability of treatment at the emergency room (Exhibits 2F and 3F). At the consultative examination, the claimant complained of joint pain, but findings from examination were normal (aside from motor strength of 4/5 in the left lower extremity due to subjective knee pain). Additionally, x-rays of the left knee were normal. Similarly, the claimant has not sought treatment for restless leg syndrome or sleep apnea. No objective tests or observations have been done to establish the etiology of these complaints. No symptom or combinations of symptoms by itself can constitute a medically determinable impairment. Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment of (sic) related to the complaints of joint pain, restless legs, or sleep apnea.

(R.17-18).

While the ALJ is correct that, pursuant to SSR 96-4p, an impairment will not be

considered disabling without some substantiating objective medical evidence, she failed in her duty to fully develop the record.  On February 18, 2011, Owens underwent a physical consultative examination by Dr. Sam Banner.  (R. 326-30).  Dr. Banner suspected that Owens suffers from sleep apnea and restless leg syndrome.  (R. 326).  He suggested that Owens "needs **a medical evaluation** and care.  **Possible sleep apnea should be evaluated**."  (R. 329) (emphasis added).  Although the consultative physician suggested further evaluation of Owens' physical condition, the ALJ did not require any further testing or examination. Pursuant to 20 C.F.R. § 416.917, the ALJ is required to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability.  The ALJ failed to obtain additional testing or otherwise develop the medical evidence.  *See Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988) (ALJ is not required to order consultative examination unless the record establishes that such an evaluation is necessary to make informed decision); *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984) (error for ALJ not to order consultative examination where the evaluation is needed to make an informed decision).  The court is at a loss as to why the ALJ would order a consultative examination but then would not request additional testing, particularly in light of the examiner's suggestion that more testing was needed.

"[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 751, 753 (11th Cir. 2011); *Manzo*

17

*v. Comm'r of Soc. Sec.*, 408 Fed. Appx. 265, 269 (11th Cir. 2011).  Because sleep apnea and restless leg syndrome would affect Owens' ability to work,[9] the ALJ's failure to secure additional testing to ascertain the extent of these impairments requires that this case be reversed and remanded for further proceedings.  The ALJ could not make an informed decision based on the record before her and thus, her decision is not supported by substantial evidence.

## V.  Conclusion

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 F. App'x. 241, 242 fn.1 (11th Cir. 2008).

A separate final judgment will be entered.

Done this 12th day of March, 2015.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[9]  The court notes that sleep apnea and/or restless leg syndrome, if established, would constitute a physical impairment sufficient to satisfy the second prong of Listing 12.05C. The second prong of the listing requires "evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities."  *Lowery*, 979 F.2d at 837; *Edwards*, 755 F.2d at 1517.